United States District Court
Southern District of Texas
**ENTERED**
June 12, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

§
Adesnumbo Adegbenro,          §
§
*Plaintiff,*          §
§
v.          §          Case No. 4:22-cv-00828
§
§
Bank of America, N.A.,          §
§
*Defendant.*          §

## MEMORANDUM AND RECOMMENDATION

This is a mortgage case that has spawned numerous motions (and serial responses to those motions). Defendant Bank of America filed a motion for judgment on the pleadings, Dkt. 15, and filed motions to strike Plaintiff Adesnumbo Adegbenro's responses to the motion as untimely, Dkt. 19 (moving to strike Dkts. 16 and 17). Bank of America also moved to strike, on various grounds, the first of Adegbenro's responses, which is presented as a sworn declaration. Dkt. 26 (motion to strike Dkt. 16). Adegbenro then filed a motion for leave to file his untimely responses, including the declaration. Dkt. 27.

Bank of America subsequently filed a motion for summary judgment, Dkt. 34, to which Adegbenro responded, Dkts. 35, 36. The latter of those responses, however, was also styled as Adegbenro's cross-motion for summary judgment. Dkt. 36. Bank of America moved to strike that cross-motion as

1

untimely.  Dkt. 37.  Adegbenro did not respond.  In addition to filing a further response to the summary judgment motion, Dkt. 41, however, Adegbenro filed yet another combined response/cross-motions for summary judgment to Bank of America's motion for summary judgment, Dkt. 40, which Bank of America moved to strike on timeliness grounds, Dkt. 42.  In the same motion, Bank of America also requested that the Court strike a motion to compel discovery that Adegbenro filed weeks after the motions deadline had passed, and months after discovery had closed.  Dkt. 42 (moving to strike Dkt. 39, which was filed on April 28, 2023); *see* Dkt. 7 (March 1, 2023 discovery deadline; April 3, 2023 motions deadline).  Adegbenro did not respond to the motion to strike.

After reviewing the motions, responses, the record, and the applicable law, the Court rules as follows with respect to the non-dispositive motions and issues: (1) Bank of America's motion for judgment on the pleadings (Dkt. 15) is converted into a motion for summary judgment; (2) Bank of America's motion to strike Adegbenro's responses (Dkt. 19) on timeliness grounds is denied; (3) Adegbenro's motion for leave to file his responses is granted (Dkt. 27); (4) Bank of America's motion to strike Adegbenro's Declaration (Dkt. 26) based on its substance is granted in part and denied in part; (5) Bank of America's motion to strike Adegbenro's belated motion to compel discovery (Dkt. 42) is granted; (6) Adegbenro's previous embedded request to compel discovery

2

(within Dkts. 16 and 17, for example) is denied in part but will be set for a conference on the remainder; and (7) Adegbenro's further request for a continuance of the motion for summary judgment (Dkts. 16, 17) is denied in part as moot and denied as unwarranted with respect to the remainder.

Regarding the dispositive motions, it is recommended that (1) Bank of America's motions to strike Adegbenro's late-filed motions for summary judgment (Dkt. 37, 42) be granted; (2) Bank of America's motions for summary judgment, including its now-converted but previous Rule 12(c) motion (Dkts. 15, 34) be granted in part with respect to Adegbenro's claims for quiet title, conspiracy to defraud, breach of the implied or express covenants of good faith and fair dealing and "bad faith breach of contract," wrongful foreclosure, violations of the Texas Deceptive Trade Practices Act ("DTPA"), negligence, and most of Adegbenro's breach-of-contract theories, but the motion should be denied in part with respect to (a) his theory that Bank of America breached the contract by improperly charging inspection fees; (b) his TILA and RESPA claims that Bank of America failed to address; and (c) his requests for declaratory and injunctive relief.

## Background

In 2006, Adegbenro purchased a home at 15338 Brock Creek Way, Cypress, TX, 77429 ("the Property") with funds borrowed from Countrywide

3

Home Loans.  Dkt. 1-2 at 72-73.  The funds were subject to two mortgages: the first, in the amount of $105,700, and the second and subordinate lien in the sum of $26,425, both in favor of Countrywide.  Dkt. 1-2 at 73 (deed of trust), *id.* at 97-98; *see also id.* at 50-51 (security document for second lien).  Adegbenro appears to have kept up with his payments (at least mostly) until June 2011.  Dkt. 22 at 147.  On an unspecified date, Countrywide initiated foreclosure proceedings and issued a notice of trustee's sale to occur on November 1, 2011.  *See* Dkt. 22 at 166.  But Countrywide then transferred its interest in the Property to Bank of America.  *See* Dkt. 22 at 167 (Aug. 18, 2011 assignment of the deed of trust).  Adegbenro's mortgage payments resumed in late 2011.  Dkt. 22 at 147.

In 2013, Bank of America and Adegbenro executed a loan modification agreement ("Modification Agreement").  Dkt. 1-2 at 39-44.  Adegbenro alleges that the Modification Agreement violated CFPB rules, that Bank of America did not properly disclose that the mortgage had a variable interest rate (as opposed a fixed rate, as he had "requested" or was "promised"), and that he was unaware it would entail "a 2nd Mortgage" until three months after-the-fact.  Dkt. 1-2 ¶¶ 7-13; *see also id.* ¶ 63 (alleging that he was "promised[] a permanent fixed interest rate, not a variable rate"); Dkt. 16 ¶ 84 (attesting that he was "promised[ ] a permanent fixed interest rate, not a variable rate").

Adegbenro's documents reflect that he made payments under the Modification Agreement through late 2016.  Dkt. 22 at 153.

In 2020, the Covid-19 Pandemic struck the United States.  Adegbenro alleges that the circumstances surrounding the pandemic relieved him of his obligation to make mortgage payments.  *See* Dkt. 1-2 ¶¶ 15-34 (alleging that the Modification Agreement is "illegal because it is required to paid while the Plaintiff is banned from working or he will die" and invoking force majeure, frustration of purpose, and impossibility).

In November 2022, Adegbenro sued Bank of America in state court, alleging myriad claims.  Dkt. 1-2 ("Plaintiff's Complaint for Damages, Declaratory Relief – Quiet Title Preliminary and Permanent Injunctive Relief").  He asserted ten specific causes of action: (1) injunctive relief; (2) quiet title; (3) breach of contract; (4) conspiracy to defraud; (5) breach of the implied duty of good faith and fair dealing; (6) "bad faith breach of contract" and covenants of good faith and fair dealing; (7) wrongful foreclosure; (8) the Texas Deceptive Trade Practices Act ("DTPA"); (9) negligence; and (10) declaratory relief.  *Id.* ¶¶ 35-181.  In its notice of removal to this Court, Bank of America acknowledged that the Complaint further alleges violations of CFPB regulations, the Truth in Lending Act, and the Real Estate Settlement Procedures Act ("RESPA").  *See* Dkt. 1 at 2-3 (asserting federal question

5

jurisdiction based on "violations of TILA, RESPA, various federal statutes" and CFPB rules); Dkt. 1-2 ¶¶ 14, 27, 43, 48, 119.

Bank of America moved for judgment on the pleadings under Rule 12(c), Dkt. 15, and summary judgment, Dkt. 34, on Adegbenro's claims.[1]  Adegbenro filed serial responses to both motions.  *See* Dkt. 16 & 17 (response to motion for judgment on the pleadings); Dkt. 35 (response to motion for summary judgment); Dkt. 36 (includes response substantively identical to Dkt. 17); Dkt. 40, 41 (responses materially the same as Dkt. 16 and 17).  The latter filings do not differ materially from his first response briefs.

Adegbenro's first response brief, though filed in response to Bank of America's Rule 12(c) motion, is styled as a response to "summary judgment" and is submitted as a sworn declaration (the "Declaration").  Dkt. 16.  Bank of America filed a motion to strike the Rule 12(c) responses as untimely and to strike the Declaration on various grounds.   Dkt. 19, 26; *see also* Dkt. 31 (response to motion to strike declaration).  Adegbenro sought leave to file his Rule 12(c) responses.  Dkt. 27; *see also* Dkt. 32 (Bank of America's response). Adegbenro's filings embedded requests to compel certain discovery, *see, e.g.*, Dkt. 16 ¶¶ 7-11, 27-39, 78-80, 95-96, 129-33; Dkt. 17 ¶ 18; Dkt. 27 at 3-5, which

---

[1] Adegbenro filed a motion for remand, Dkt. 8, which was denied, Dkt. 14 (adopting Dkt. 13).

Bank of America opposed, Dkt. 32.  In the same filings, Adegbenro also sought a stay of ruling on the "summary judgment" until "discovery is complete."  Dkt. 16 ¶ 23; *see also id.* ¶¶ 89-90, 107-08; Dkt. 17 at 12-13.

Bank of America later filed a motion for summary judgment, Dkt. 34, to which Adegbenro filed four responses that are substantially the same as his earlier responses to the Rule 12(c) motion, *compare* Dkt. 35, 36, 40, 41, *with* Dkt. 16, 17.  Two of those responses, however, also purport to be cross-motions for summary judgment, despite being filed weeks after the motions deadline had expired.  *See* Dkt. 7 (Apr. 3, 2023 motions deadline); Dkt. 36 (filed Apr. 20, 2023); Dkt. 40 (filed Apr. 28, 2023).  Adegbenro also filed another motion to compel discovery, also after the motions deadline had passed and months after discovery had closed.  *See* Dkt. 7 (Mar. 1, 2023 discovery deadline); Dkt. 39 (filed Apr. 28, 2023).  Bank of America moved to strike the tardy cross-motions for summary judgment and motion to compel.  Dkt. 37, 42.  Adegbenro did not respond to those motions to strike.

All of these motions are ripe for resolution.

## Legal standards

### A.    Motion for judgment on the pleadings

A party may move for judgment on the pleadings "after the pleadings have closed—but early enough not to delay trial ...." Fed. R. Civ. P. 12(c).  This

mechanism "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam). "The standard for deciding a Rule 12(c) motion is the same standard used for deciding motions to dismiss pursuant to Rule 12(b)(6)." *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256 (5th Cir. 2022).

When materials outside the pleadings are submitted either in support of, or opposition to, a motion to dismiss, courts have discretion to determine whether the proffered material is likely to facilitate disposing of the action. *See Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 188 (S.D. Tex. 2008). If the court opts to consider the extrinsic material, then the motion to dismiss must be converted into a motion for summary judgment. *Id.* (citing Fed. R. Civ. P. 12(d)); *see also St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991) ("When material outside the pleadings is considered, however, the court will generally exercise its discretion to treat the [Rule 12(b)(6) or Rule 12(c)] motion as one for summary judgment.").

## B.    Summary judgment

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if the issue that it tends to resolve "could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379-80 (5th Cir. 2020) (citing *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)).

When resolving a motion for summary judgment, courts must view the facts and any reasonable inferences "in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (internal quotation marks omitted). But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023) (quoting *Brown v. City of Hous.*, 337 F.3d 539, 547 (5th Cir. 2003)).

## Analysis

As noted, Bank of America filed both a motion for judgment on the pleadings under Rule 12(c), Dkt. 15, and a motion for summary judgment, Dkt. 34. Ordinarily, the Court would begin by assessing Adegbenro's claims under the Rule 12(c) pleading standard, analyzing only the allegations in the petition

and all documents referenced therein.  But because of the procedural rulings
detailed herein, both motions collapse into one and will be evaluated under the
Rule 56 standard.

## I.    <u>Procedural challenges</u>

### A.    **Motions to strike untimely filings and conversion of Rule 12(c) motion into summary judgment motion**

As a procedural matter, the Court must determine what filings are
properly considered.  The record reflects that Adegbenro has persistently
ignored court-imposed deadlines for his submissions.  Bank of America has
moved to strike these untimely filings, and the Court concludes that most—
although not all—will be stricken.

More than a month after the deadline had expired, Adegbenro filed a
response to Bank of America's Rule 12(c) motion that he styled as an opposition
to "summary judgment."  *See* Dkt. 15 (Rule 12(c) motion, filed Dec. 19, 2022);
Dkt. 16 (response filed Feb. 14, 2023); Dkt. 17 (amended response filed Feb. 14,
2023); S.D. Tex. L.R. 7.3 & 7.4 (responses must be filed "by the submission day"
which is 21 days after the motion is filed).  One of Adegbenro's tardy
submissions took the form of a sworn Declaration, Dkt. 16, which Bank of
America moved to strike on substantive grounds (addressed *infra* Part I.B),
Dkt. 26.  Adegbenro also submitted numerous exhibits in support of his Rule
12(c) responses.  *See* Dkt. 22.  In the interim, Bank of America moved to strike

Adegbenro's response to the Rule 12(c) motion (and the amended version, Dkt. 17) as untimely.  Dkt. 19.  Adegbenro then filed a motion for leave to file his belated submissions, arguing that his delay stemmed from needing to review "2400 pages of documents sent by Bank of America."  Dkt. 27 at 1-2.

The Court grants Adegbenro leave to file his tardy Rule 12(c) responses and Declaration, Dkts. 16, 17, and will consider his supporting exhibits, Dkt. 22.  First, because Adegbenro submitted evidence in response to the Rule 12(c) motion that is relevant and helpful to resolving the issues, the Court exercises its discretion under Rule 12(d) to convert the motion into one for summary judgment.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *see also, e.g.*, *Bentson v. Chyma*, 2017 WL 9250308, at *3 (E.D. Tex. Feb. 24, 2017) (noting prior order converting Rule 12(c) motion into a motion for summary judgment because the non-movant submitted extrinsic evidence controverting "certain facts upon which resolution of the 12(c) motion relied"), *report and recommendation adopted*, 2017 WL 1159764 (E.D. Tex. Mar. 29, 2017); Charles Alan Wright, et al., Conversion of a Rule 12(b)(6) Motion Into a Summary Judgment Motion, 5C Fed. Prac. & Proc. Civ. § 1366 (3d ed.) ("Either the pleader or the moving party or both may bring the conversion provision

11

into operation by submitting matter that is outside the challenged pleading, as courts in every circuit have recognized."). This is especially appropriate, given that Bank of America has also filed a motion for summary judgment that raises the same contentions as its Rule 12(c) motion. *Compare* Dkt. 15, *with* Dkt. 34.

Moreover, the first of Adegbenro's filings, Dkt. 16, is substantially identical to his timely-filed responses to Bank of America's motion for summary judgment, which contains largely the same assertions but are not sworn, Dkts. 35, 41. And the second of those filings, Dkt. 17, is substantively the same as his further responses to Bank of America's motion for summary judgment, Dkts. 36, 40. Bank of America has not shown that permitting Adegbenro's earlier filings would prejudice its interests, when those filings largely duplicate other subsequent filings and Bank of America had ample opportunity to respond. Bank of America's motion to strike Adegbenro's responses (Dkt. 19) is denied.

On the other hand, Adegbenro, in conjunction with responding to Bank of America's motion for summary judgment, also attempted to cross-move for summary judgment weeks after the motions deadline had passed. *See* Dkt. 7 (Apr. 3, 2023 motions deadline); Dkt. 36 (Apr. 20, 2023 opposition to Dkt. 34 and cross-motion for summary judgment). Bank of America filed a motion to strike that filing as untimely, Dkt. 37, to which Adegbenro did not respond.

12

Given his failure to provide good cause for the late filing, Adegbenro's April 20, 2023 cross-motion for summary judgment should be stricken and not considered as an affirmative motion for relief.

Even later, Adegbenro filed yet another version of his combined response to Bank of America's motion for summary judgment and cross-motion for summary judgment. Dkt. 40 (filed April 28, 2023). Bank of America moved to strike the new cross-motion for summary judgment on timeliness grounds. Dkt. 42. Adegbenro did not respond or otherwise attempt to justify his (repeated) disregard of the Court's deadlines. His latest tardy cross-motion for summary judgment (Dkt. 40) should also be stricken.[2]

### B.    Motion to strike Adegbenro's Declaration

Bank of America moves to strike Adegbenro's 55-page summary-judgment Declaration (Dkt. 16) as "speculative, conclusory, lacking in foundation, and based on inadmissible hearsay." Dkt. 26 at 2-3. But Bank of America makes no attempt to parse the voluminous contents of the Declaration. Its global objection fails to adequately demonstrate that the

---

[2] Although the Court will consider these filings (Dkts. 36, 40) to the extent they respond to Bank of America's motion for summary judgment, they do not add anything material to Adegbenro's earlier filings (Dkts. 16, 17, 35) that the Court is already considering in connection with Bank of America's motions. Thus, for convenience, the Court will refer to Adegbenro's arguments in those earlier filings when addressing the summary judgment issues.

entire Declaration should be stricken.  *See, e.g.*, *Caldarera v. Tenn. Log & Timber Homes, Inc.*, 2013 WL 5937396, at *2 (S.D. Miss. Nov. 4, 2013) (citing 210B Charles Alan Wright, et al., Federal Practice and procedure § 2738 (3d ed.)); *Elscholtz v. Taser Int'l, Inc.*, 2007 WL 2781664, at *2 n.3 (N.D. Tex. Sept. 25, 2007) (rejecting "global objection" to an affidavit).

That said, "when considering a motion for summary judgment, a court may sua sponte decline to consider evidence which does not comply with Rule 56(c)(4)." *Loomis v. Starkville Miss. Pub. Sch. Dist.*, 150 F. Supp. 3d 730, 743 (N.D. Miss. 2015).  Rule 56(c)(4), in turn, requires that a declaration submitted in opposition to summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the ... declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  The Court thus proceeds to analyze the assertions in Adegbenro's Declaration to determine whether any portion is admissible for summary judgment purposes.

### 1.    *Unsubstantiated assertions and legal conclusions*

Bank of America argues that the Declaration is replete with "outlandish statements unsupported by any facts."  Dkt. 26 at 2.  The Court agrees that Adegbenro has not disclosed how he could conceivably have personal knowledge regarding many of his allegations, including for example:

- that Bank of America "used an automated default mortgage servicing platform" to "charge defaulted or at-risk-of default

14

borrowers for multiple and repetitive 'property inspections,'" Dkt. 16 ¶ 38;

- that Bank of America "did NOT pay fair value for the subject note and mortgage from the criminally defunct Countrywide[,] *id.* ¶ 84;

- that Adegbenro "believes" that Bank of America does not hold the note and that note is not secured by the deed of trust, *id.* ¶ 85;

- that "Bank of America did conspire with servicers, employees, and brokers all together to enslave the Plaintiff as a borrower for life," *id.* ¶ 132;

- that "Bank of America and remaining [non-existent] co-defendants conspired and aided and abetted" fraudulent acts, "including, but not limited to, executing and recording false documents; signing documents without actual pre-recorded authority to do so; doing business as a closed trust without registering to do business here; acting as a debt collector without registering as a debt collector ...; by separating the note and the mortgage, making the mortgage a nullity," *id.* ¶ 180

- that "[t]he broker who set up the transaction was unlicensed and the second mortgage was illegal and void for those reasons," *id.* ¶ 231;

- that an unspecified "forensic audit" shows "that the mortgage is actually held by Freddie Mac," *id.* ¶ 235;

- that individuals who signed documents on behalf of MERS "never had the authority" to do so, "which make [sic] those documents void," *id.* ¶ 275; *see also id.* ¶¶ 280-81;

- that "the loan was securitized into" into a Freddic Mac trust that ostensibly led to some sort of settlement with Bank of America, *id.* ¶ 266-69,

- that Bank of America, Countrywide, or others were already made whole through private mortgage insurance, *id.* ¶¶ 224, 228, 239-64, 266-69, 288-89,

- that "Defendants admit that the Note and mortgage used to foreclose were not authentic documents," *id.* ¶ 286, and

- that "[i]t is a common well known fact that servicers push borrowers into default," citing but not disclosing the "following discourse from "congressional hearings" and claiming "Congress recognizes" this "fact," ¶¶ 302-03.

Those types of allegations, made without any articulated basis for personal knowledge, are stricken. *See* Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge."); Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Other contentions in the Declaration are simply legal conclusions (and legal argument) masquerading as facts.[3] Many assertions are conclusory as

---

[3] *See, e.g.*, Dkt. 16 ¶¶ 17, 43, 58, 173, 187-88, 190-92, 201, 207 (alleging Bank of America "was convicted of this precise behavior ... and the Plaintiff was a direct victim of these crimes and discrimination"), ¶¶ 18-19, 21, 101, 190-92, 215-16, 225-27, 235-37 (asserting purported propositions of law), ¶ 30 ("This motion for summary judgment is just a sham for the purpose of avoiding discovery"), ¶¶ 39, 52-54, 64-65, 72-75, 83-84, 86-90, 91-95, 99, 101-05, 113, 134-35, 141-44, 146-50, 160-61, 169-70, 179-83, 196-97, 202, 217, 233-37, 245, 247-65, 293-96, 299-300, 304 (making legal arguments why motion for summary judgment should be denied or why Adegbenro's claims are valid), ¶ 83 (arguing conclusorily that Adegbenro suffered damages "because of the criminal conduct of the Defendants"), ¶ 106 (similar), ¶¶ 81 (arguing that he "is the equitable owner of the Subject Property" entitled to "quiet title"), ¶ 84 (asserting that Bank of America "waived their right of recovery"), ¶¶ 294-95 (arguing the mortgage is void and unenforceable and that Adegbenro is entitled to relief); Dkt. 16 ¶¶ 8-12, 23-24, 26-31, 51-54, 78-80, 89, 95-99, 107-08, 130-33, 135, 140, 145 (legal arguments about discovery).

unsupported by any facts.[4]  Those allegations are not evidence either and are stricken.  They will be treated as legal argument only.

### 2.  *Prior investigations and settlements*

The Declaration repeatedly references the federal government's prior settlements (which Adegbenro characterizes as "convictions") and investigations of various issues with Countrywide or Bank of America (and other entities).  *See, e.g.*, Dkt. 16 ¶¶ 3-6, 22, 45-50, 59-60, 104, 122, 136, 152-54, 157, 157-59, 162-68, 173, 185-86, 193, 210-13, 290-92, 297-98, 301-02.  According to Declaration, those prior settlements demonstrate that Adegbenro was victimized by Bank of America's misconduct, including by receiving a discriminatory loan with a higher interest rate than white borrowers with the same credit rating.  *See, e.g.*, *id.* ¶¶ 1, 5-7, 13-14, 17, 26, 40, 43-44, 50, 55, 58-70, 71-77, 100, 109-12, 112-23, 129, 137-38, 151, 155, 157, 169-70, 175, 177,

---

[4] *See, e.g.*, Dkt. 16 ¶ 100 (declaring that the "steady incline in the amount billed each month without explanation" establishes "fraud and criminal intent"), ¶¶ 125, 127-28 (similar), ¶ 106 (asserting that improper charges on the mortgage "caused him damages, emotional distress, and economic loss"), ¶ 139 (alleging that he was billed "for amounts which were neither due nor owing, overcharged for services which were rendered, and charged for services which were never rendered"), ¶¶ 179-83 (asserting deceptive practices and conspiracy and resulting damages, including speculation about entitlement to 'four million dollars" and "twelve million" in exemplary damages "*if* DEFENDANTS sell the property to a third party bona fide purchaser for value"), ¶ 203 (declaring that Bank of America "falsely claim[ed] to hold a public auction during a pandemic and then [did] not hold[ ] the auction, instead just transferring title to [Bank of America]"), ¶¶ 178-79, 208-09 (alleging Bank of America "claim[ed] to have a public auction where none transpired" thereby violating the DTPA).

185-89, 193-98, 201-04, 207, 210-14, 219-20, 230, 287, 297-98, 302-03; *see also*

*id.* ¶¶ 157-63 (discussing consent order to refrain from discriminating on loan

applicants who rely on disability income); *id.* ¶¶ 119-29 (alleging conspiracy

"to enslave the Plaintiff as a borrower for life").   These allegations are

inadmissible for several reasons.

First, even assuming that those prior disputes between Countrywide,

Bank of America, and governmental authorities resulted in judgments, they

stemmed from regulatory and civil actions—not criminal prosecutions, as

Adegbenro mischaracterizes them to be.   *See, e.g.*, Dkt. 16 ¶¶ 207-12 (alleging

Bank of America was "convicted" of "crimes" but citing only civil statutes).

Adegbenro does not provide copies of any of these purported judgments.   He

merely offers his *characterizations* of their contents.   That is inadmissible

hearsay. [5]  *See* Fed. R. Evid. 801; *United States v. Stinson*, 647 F.3d 1196, 1210

(9th Cir. 2011) (affirming exclusion of order granting a habeas petition as

---

[5] The Declaration does embed a link to a December 28, 2011 consent order between Countrywide and the U.S. Government that resolved alleged violations of the Equal Credit Opportunity Act and Fair Housing Act.    Dkt. 16 ¶ 298 (citing https://www.justice.gov/sites/default/files/crt/legacy/2012/01/27/countrywidesettle.pdf); *see also id.* ¶ 292 (referencing the settlement fund for that case).   The consent order explicitly states that "[t]here has been no factual finding or adjudication with respect to any matter alleged by the United States," thereby making apparent that Adegbenro cannot rely on it to prove any wrongdoing by Countrywide or its successor, Bank of America.   *See United States v. Countrywide Fin. Corp.*, 2:11-cv-10540-PSG-AJW, Dkt. 4 at 2 (C.D. Cal. Dec. 28, 2011).

"inadmissible hearsay because it was offered for its truth"); *Africano v. Atrium Med. Corp.*, 2021 WL 4477867, at *2-3 (N.D. Ill. Sept. 30, 2021) ("[C]ivil judgments are ... not to be usable in subsequent proceedings as evidence of the facts underlying the judgment; for as to those facts, the judgment is hearsay.") (quoting *Greycas, Inc. v. Proud*, 826 F.2d 1560, 1567 (7th Cir. 1987)).

Adegbenro's statements describing the alleged consent of consent decrees are inadmissible for yet another reason.   Those prior settlements cannot be used "to prove or disprove the validity or amount of a disputed claim"—as Adegbenro attempts to do.   Fed. R. Evid. 408; *see Hudspeth v. Comm'r of Internal Revenue*, 914 F.2d 1207, 1213 (9th Cir. 1990) ("Rules 408 does apply to situations where the party seeking to introduce evidence of a compromise was not involved in the original compromise."); *Africano*, 2021 WL 4477867, at *2 (barring reliance on consent decrees that "are considered settlements for purposes of Rule 408") (internal quotation marks omitted).

Second, Adegbenro failed to plead a discriminatory lending claim in his Complaint.   Nor did Adegbenro seek leave to amend his complaint to include this belated theory or demonstrate good cause for permitting him to do so, even though the pleadings deadline had expired months earlier.   *See* Dkt. 7 (Dec. 1, 2022 deadline for amending pleadings).   Adegbenro's new, unpleaded

19

discrimination theory is therefore disregarded.[6]  *See, e.g.*, *Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."); *see also, e.g.*, *Douglas v. Wells Fargo Bank, N.A.*, 992 F.3d 367, 373 (5th Cir. 2021) (noting that leave to amend complaint to raise new claim "can only be granted for good cause," citing Fed. R. Civ. P. 16(b)(4)).

### 3.    *Other unpleaded allegations*

As with the discriminatory lending claim, the Declaration purports to raise yet other new claims and theories that were not pleaded in the Complaint.  These include: (1) assertions that Adegbenro's signature on the Modification Agreement or "second mortgage" was forged, Dkt. 16 ¶¶ 14-16, 41-42, 55-57, 114-16, 156-57, 171-72, 199-200, 205-06, 218, 229-30; (2) complaints about his mortgage insurance, *id.* ¶¶ 221-23 (citing exhibits that were not attached); (3) claims under 42 U.S.C. §§ 1983 and 1985(3), alleging a conspiracy to discriminate, *id.* ¶¶ 117-21; (4) passing references to "Defendants'" investment in a "trust" and violations of the Trust Indenture Act

---

[6] The Court also disregards Adegbenro's further and related references to yet more outside sources in his response to Bank of America's motion to strike his Declaration. *See* Dkt. 31 at 3-4, 9 (quoting dialogue from a Congressional hearing discussing default fees generally and a third-party briefing paper).  These are hearsay, address non-pleaded issues, and are irrelevant.

(with no discernable relevance or explanation), *id.* ¶¶ 238, 287; (5) allegations that Adegbenro's mortgage had already been satisfied in full by private mortgage insurance, ¶¶ 224, 228, 239-64, 266-69, 284, 288-89; and (6) allegations concerning Freddie Mac, MERS, and the "Indymac Mortgage," *id.* ¶¶ 224, 228, 231-32, 266-85, 285. Again, Adegbenro has not sought nor shown good cause for permitting him to raise these new claims and theories many months after the deadline for amending pleadings had expired. His new allegations are therefore stricken.

### 4. *Remaining admissible factual assertions*

What remains, then, are the following sworn assertions:

- that Adegbenro "borrowed money from Countrywide Home Loans now Bank of America to purchase his home," Dkt. 1-2 ¶ 2;

- that Bank of America billed Adegbenro for inspections, refused to "remove the wrongfully imposed charges for the inspections," and refused to provide information substantiating the inspections, including who performed them and why they were performed, *id.* ¶¶ 32-37;

- that Adegbenro made "his payments on time and in full," *id.* ¶ 102; and

- that when Adegbenro "asked for an accounting" and an explanation of the charges, Bank of America refused to answer his Qualified Written Request," *id.* ¶ 140; *see also id.* ¶ 145.

Bank of America has not articulated any basis for excluding these averments, which are statements of fact within Adegbenro's personal knowledge. These

statements are therefore admissible. Bank of America's global motion to strike the entire Declaration (Dkt. 26) is therefore denied in this respect.

## C.   Requests to compel discovery and to stay rulings on summary judgment

In his response to the Rule 12(c) motion (which the Court treats as a motion for summary judgment), Adegbenro embedded a request to compel discovery. *See, e.g.*, Dkt. 16 ¶¶ 8-12, 23-24, 28-29, 51-54, 78-80, 89, 95-98, 107-08, 130-33, 145. Adegbenro referenced this request in his motion for leave to file his responses. Dkt. 27 at 1-2. Bank of America then argued that Adegbenro's request for additional discovery lacks specificity, fails to address whether the discovery sought is proportional to the needs of the case, and fails to include a certification that Adegbenro properly conferred with Bank of America before seeking relief. Dkt. 32 at 1-5.

Weeks after the motions deadline passed—and two months after discovery closed—Adegbenro filed a standalone motion to compel discovery. *See* Dkt. 7 (March 1, 2023 discovery deadline and April 3, 2023 motions deadline); Dkt. 39 (April 28, 2023 motion to compel). Although Bank of America moved to strike it as untimely, Dkt. 42, Adegbenro did not respond.

The unjustified untimeliness of Adegbenro's latest motion to compel, Dkt. 39, warrants denying it. Adegbenro neither asserts nor demonstrates good cause for concluding otherwise.

22

Adegbenro's earlier demands for discovery, however, merit discussion. [7]
"The party filing the motion to compel bears the burden of showing that the
materials and information are within the scope of permissible discovery ...."
*Commodity Futures Trading Comm'n v. EOX Holdings LLC*, 2021 WL 848178,
at *3 (S.D. Tex. Mar. 5, 2021).   This burden includes showing that the
documents are relevant to the movant's claims and that the discovery sought
is proportional to the needs of the case.  Fed. R. Civ. P. 26(a).  To obtain relief,
the movant also must clearly identify what documents he thinks are
discoverable.  *Raby v. Livingston*, 600 F.3d 5582, 561 (5th Cir. 2010).

Here, most of Adegbenro's references to outstanding discovery are too
non-specific to meet his burden, concern issues that are irrelevant because they
were not pleaded in his Complaint (and therefore are disregarded, *see supra*
Parts I.B.2 & 3), or both.  *See, e.g.*, Dkt. 16 ¶¶ 7-11, 129-30 (invoking unpleaded
allegations of discriminatory lending and an unauthorized mortgage); Dkt. 17
¶¶ 20-23 (similar); Dkt. 16 ¶¶ 23, 78-80 (generalized assertion that discovery
is incomplete or that Bank of America refused to answer unidentified discovery

---

[7] The Court notes that Adegbenro's motion to compel is procedurally improper.  Under
the Court's rules, parties cannot file a motion regarding a discovery dispute without
engaging in a pre-motion letter process.  *See* Judge Alfred H. Bennett, Court
Procedures and Practices ¶ 4.  Nevertheless, given the posture of this case, the
recommended disposition of Adegbenro's claims, and the interests of efficiency, the
Court will address the discovery issue.

requests); Dkt. 17 ¶¶ 11-18 (complaining about Bank of America's unidentified discovery responses, which were not attached, and asking that it be compelled to "provide complete responses").

Adegbenro did, however, specifically identify Bank of America's failure to respond to discovery requests about inspection fees that were charged. *See, e.g.*, Dkt. ¶¶ 29-39, 93-96, 108 (complaining about failure to produce information showing who performed the inspections and why they were performed, as well as the inspection reports themselves); Dkt. 17 ¶ 24 (complaining about failure to provide inspection reports). Given his allegation that Bank of America breached the contract by improperly charging him for inspection fees, *see* Dkt. 1-2 ¶¶ 8, 69 (alleging improper charging of fees); *see also* Dkt. 16 ¶¶ 32-39 (asserting that Bank of America wrongfully charged inspection fees), this discovery is plainly relevant to and proportional to the needs of the case.

On the other hand, Adegbenro did not attach copies of his alleged requests for the relevant documents and information. *See* Dkt. 27 at 9-11 (blank pages). The record does not indicate that Adegbenro properly conferred with Bank of America. *See* Dkt. 27 at 4 (meet and confer, where Bank of America's counsel asked "[a]re there certain responses you have issues with?"). Given the recommended disposition of this theory, however, *see infra* Part II.H,

the Court deems it appropriate to hold a status conference and resolve what documents on this subject have yet to be produced.

The disposition of Adegbenro's request for additional discovery also affects Adegbenro's further request for continuance of any ruling on Bank of America's summary judgment motions. *See, e.g.*, Dkt. 16 ¶¶ 11, 23-24; Dkt. 17 at 12-13.   Under Rule 56(d), a non-movant can request a continuance for further discovery if he "shows by affidavit or declaration that, for specific reasons, [he] cannot present facts essential to justify [his] opposition." Fed. R. Civ. P. 56(d).   The only relevant outstanding discovery that Adegbenro has detailed concerns the inspection fees.   And as explained below, the recommended denial of summary judgment on that claim moots Adegbenro's request for a continuance with respect to that claim. *See infra* Part II.H.

For the remaining claims, there is no basis for continuing the summary judgment ruling.   Discovery has long since closed, yet Adegbenro did not supplement his prior responses with additional evidence.   Adegbenro's requests to compel further discovery also failed to adequately identify what other documents he demanded that Bank of America failed to produce, and he did not show what additional documents would be relevant to the claims pleaded in his Complaint.   Adegbenro's request for a Rule 56(d) continuance therefore is denied in part as moot and denied in part as unwarranted.

25

## II.  **Bank of America's motion for summary judgment**

The Court now turns to the substance of Bank of America's motion for summary judgment.  Dkt. 34; *see also* Dkt. 15 (same arguments).  Bank of America challenges the ten causes of action that Adegbenro explicitly asserts: (1) injunctive relief; (2) quiet title; (3) breach of contract; (4) conspiracy to defraud; (5) breach of the implied duty of good faith and fair dealing; (6) "bad faith breach of contract" and covenants of good faith and fair dealing; (7) wrongful foreclosure; (8) DTPA; (9) negligence; and (10) declaratory relief. Dkt. 34 at 5-16; *see also* Dkt. 1-2 ¶¶ 35-181 (Complaint).

As explained below, even with the benefit of liberal construction afforded to pro se pleadings, *see Jennings v. Towers Watson*, 11 F.4th 335, 341 (5th Cir. 2021), Adegbenro has not raised a genuine issue of material fact on his claims for quiet title, conspiracy, breach of the implied or express covenants of good faith or fair dealing, wrongful foreclosure, DPTA, and negligence.  Although Adegbenro lacks evidence supporting most of his breach of contract theories, he has raised a fact issue on his theory that Bank of America improperly charged inspection fees.  Bank of America also failed to challenge Adegbenro's other pleaded claims for violations of TILA and RESPA.  And the survival of all these claims negates Bank of America's assumption that there are no remaining claims that can support Adegbenro's requests for declaratory and

26

injunctive relief.  Bank of America's motion for summary judgment, together with its Rule 12(c) motion that has been converted into a motion for summary judgment, should therefore be granted in part and denied in part.[8]

### A.    Claims asserted but not addressed by Bank of America

As a preliminary observation, Bank of America did not move for summary judgment (or even for dismissal under Rule 12(c)) on two of Adegbenro's claims, *see* Dkts. 15, 34, despite previously acknowledging that those claims were part of this case.  In his Complaint, Adegbenro asserted violations of the Real Estate Settlement Procedures Act (RESPA) and the Truth in Lending Act (TILA).[9]  *See* Dkt. 1-2 ¶ 27 (asserting that he is entitled to a declaratory judgment because Bank of America violated both TILA and RESPA), ¶ 43 (alleging "concealment of the terms of conditions of the loan modification and promise of a fixed rate where a variable rate was given, all violate TILA and RESPA and make the note and mortgage void and unenforceable").  Bank of America knows this, too, as its notice of removal

---

[8] Because the arguments in both motions squarely overlap, the ensuing analysis will cite Bank of America's explicit motion for summary judgment, Dkt. 34.

[9] Adegbenro's further reference to claimed violations of CFPB rules "related to the Pandemic," *see* Dkt. 1-2 ¶ 14; *see also id.* ¶ 119, are intertwined with his RESPA claim because they invoke RESPA's amended version of Regulation X.  *Compare id.* at 3 n.1, *with* Protections for Borrowers Affected by the COVID-19 Emergency Under the Real Estate Settlement Procedures Act, Regulation X, 86 Fed. Reg. 34,848 (June 30, 2021) (to be codified at 12 C.F.R. pt. 1024).

explicitly referenced these allegations as an alternative basis for subject matter jurisdiction.  *See* Dkt. 1 at 3 (citing "violations of TILA, RESPA," among others, as basis for federal question jurisdiction).

The Court does not opine on whether those claims could survive summary judgment or even a Rule 12(c) motion.  The fact remains that Bank of America's failure to file any motion challenging the TILA and RESPA claims bars its request for a take-nothing judgment in its favor, even assuming the remainder of Adegbenro's claims would not survive summary judgment.  *See Cornejo v. Sy Food, Inc.*, 2009 WL 1617074, at *3 n.11 (S.D. Tex. Apr. 22, 2009) ("Defendants have failed to move for summary judgment on this issue, hence, it remains for the trier of fact to resolve.").

### B.    Quiet title claim

Adegbenro seeks to clear the cloud on his title to the Property with a quiet title action.  "To establish a quiet title claim, a plaintiff must show the following: (1) an interest in specific property; (2) that title to the property is affected by defendants' claim; and (3) that the claim, although facially valid, is invalid or unenforceable." *Trotter v. Bank of Am., N.A.*, 2013 WL 12106138, at *4 (S.D. Tex. June 28, 2013) (citing *Sadler v. Duvall*, 815 S.W.2d 285, 293 n.2 (Tex. App.—Texarkana 1991, writ denied)).  Ultimately, a quiet title claim "relies on the invalidity of the defendant's claim to the property." *See Essex*

*Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (reversing judgment on quiet title because plaintiff failed to establish that defendant's lien was invalid).

Here, however, Adegbenro provides no evidence demonstrating that the original Countrywide mortgages in 2006, nor the Modification Agreement executed in 2013, are invalid. His newfound theories, including that the loans were discriminatory, *see, e.g.*, Dkt. 17 ¶¶ 1-4 n.1; Dkt. 36 ¶¶ 1-4 n.1, were not pleaded and are not properly considered now. *See supra* Parts I.B.2 & 3.

Regardless, there is no legal basis to conclude that any of his theories, including that Bank of America failed to inform Adegbenro about the variable nature of the interest rate, Dkt. 16 ¶ 84; Dkt. 35 ¶ 92; Dkt. 36 at 21, or that Countrywide or Bank of America charged improper fees while servicing the loans, Dkt. 16 ¶¶ 32-39, 93, 304; Dkt. 35 ¶¶ 40-47, 101, 312; Dkt. 36 at 24, would give Adegbenro a superior right to the Property itself, as opposed to potential damages for allegedly wrongful charges. Although Adegbenro claims that he made all payments "on time and in full," Dkt. 16 ¶ 102—which his own exhibits do not support, *see* Dkt. 22 at 159 (last regular payment on November 18, 2016)—he submits no evidence showing that he paid the full sum of interest and principal owed on the notes such that he could be entitled to extinguish Bank of America's lien. *See, e.g.*, *Logan v. Carrington Mortgage Servs., LLC*,

29

2020 WL 853857, at *6 (S.D. Tex. Jan. 14, 2020) ("In Texas, it is a necessary prerequisite to a suit to quiet title that the plaintiff tender payment of the amount owed on the note.") (citing *Cook-Bell v. Mortgage Elec. Registration Sys., Inc.*, 868 F. Supp. 2d 585, 591 (N.D. Tex. 2012)), *report and recommendation adopted*, 2020 WL 837594 (S.D. Tex. Feb. 20, 2020). Summary judgment is therefore warranted on Adegbenro's quiet title claim.

### C.   Conspiracy to defraud

Likewise, the Court agrees with Bank of America that Adegbenro fails to raise a fact issue on his civil conspiracy claim.[10]  *See* Dkt. 34 at 8-9.  Civil conspiracy is a derivative tort that requires defendant's participation in some other underlying tortious conduct.  *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)).  For this claim, Adegbenro must show "(1) two or more persons; (2) an objective to be accomplished; (3) a meeting of the minds on the objective; (4) one or more unlawful overt acts; and (5) damages as the proximate result."  *Murray v. Earle*, 405 F.3d 278, 293 (5th Cir. 2005).  To show a meeting of the minds, there must be a "specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."  *Kiggundu v. Mortg. Elec.*

---

[10] The Court rejects Adegbenro's attempt to morph this claim into yet another new discrimination theory under 42 U.S.C. § 1983 or § 1985(3), *see, e.g.*, Dkt. 16 ¶¶ 119-25; Dkt. 36 at 27-28, which is nowhere asserted in his Complaint.

*Registration Sys., Inc.*, 2011 WL 2606359, at *6 (S.D. Tex. June 30, 2011), *aff'd*,
469 F. App'x 330 (5th Cir. 2012).

Adegbenro proffers no evidence that Bank of America entered into an
agreement to accomplish an unlawful objective or to achieve a lawful purpose
using unlawful means.   His repeated references to prior settlements and
investigations involving Countrywide or Bank of America—even if they had
been properly tendered in their original form (they were not)—would be
inadmissible to show that Bank of America committed wrongs against him in
this case.  *See supra* Parts I.B.2 & 3; *see also, e.g.*, Dkt. 36 at 28 (referencing
"convictions by the 50 US Attorneys and the Federal Government between
Bank of America, Amabac Assurance, the servicers for Bank of America and
the Defendant, Bank of America").

Apart from those inadmissible assertions, Adegbenro has not even
identified another entity or person with whom Bank of America allegedly
conspired.  Because Adegbenro failed to raise a fact issue on civil conspiracy,
the Court should grant summary judgment for Bank of America on this claim.

### D.    Implied or express covenant of good faith and fair dealing

Bank of America argues that Adegbenro's claims premised on the duty
of good faith and fair dealing are barred because "[t]he Texas Supreme Court
has declined to read an implied duty of good faith and fair dealing into every

contract." Dkt. 34 at 9 (citing *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983)); *see also* Dkt. 1-2 ¶¶ 108-50 (Complaint).  Rather, the duty requires that the parties have a "special relationship," which does not exist between mortgagors and mortgagees.  *Id.* at 10.  Bank of America is correct.

"Texas courts have found no special relationship between a mortgagor and a mortgagee ... that would impose an independent common law duty of good faith and fair dealing."  *UMLIC VP LLC v. T&M Sales & Envt'l Sys.*, 176 S.W.3d 595, 612 (Tex. App.—Corpus Christi 2005, pet. denied) (collecting authorities).  This is "well settled" law.  *See Mass v. Wells Fargo Bank*, N.A., 2022 WL 61161, at *4 (S.D. Tex. Jan. 6, 2022) (quoting *Manufacturers Hanover Trust Co. v. Kingston Investors Corp.*, 819 S.W.2d 607, 610 (Tex. App.— Houston [1st Dist.] 1991, no writ), for principle that "[i]t is well settled that the relationship between a borrower and its lender is neither a fiduciary relationship, nor a special relationship"); *Silva v. Wells Fargo Bank, N.A.*, 2013 WL 12129969, at *6 (S.D. Tex. June 13, 2013) (dismissing claim for breach of implied duty of good faith and fair dealing for this reason).

Adegbenro and Bank of America, as borrower and lender, have no special relationship that can give rise to an implied duty of good faith and fair dealing. Adegbenro cannot rely on his characterizations of prior consent decrees that he did not attach and, in any event, are hearsay, inadmissible compromises

under Federal Rule of Evidence 408, and invoke theories that were not properly pleaded in his Complaint. *See, e.g.*, Dkt. 36 at 31-32 (referencing unattached exhibits regarding consent decrees, including those involving disability discrimination, discrimination on receipt of public assistance, and the like); *see supra* Parts I.B.2 & 3.

Adegbenro's alternative framing of this claim as a "bad faith breach of contract and covenants of good faith and fair dealing" fares no better. *See* Dkt. 1-2 at 20. He does not identify any express covenants imposing a duty of good faith, and the Court finds none. *See* Dkt. 1-2 at 39-44 (Modification Agreement); Dkt. 1-2 at 73-84 (deed of trust). Adegbenro's reliance on non-existent express covenants fails as a matter of law. Summary judgment should be granted to dismiss all his good faith and fair dealing-related claims.

### E. Wrongful foreclosure

As for the wrongful foreclosure claim, Bank of America contends that Adegbenro fails to show that a foreclosure sale occurred, as Texas law requires. Dkt. 34 at 10-11. The Court agrees.

To recover for wrongful foreclosure, a plaintiff must show "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Duncan v. Hindy*, 590 S.W.3d 713, 723 (Tex. App.—Amarillo, 2019, pet.

denied).  These elements reflect that "courts in Texas do not recognize an action for attempted wrongful foreclosure." *Farshchi v. Wells Faro Bank, N.A.*, 2016 WL 2858903, at *5 (S.D. Tex. May 13, 2016) (quoting *Motten v. Chase Home Finance*, 831 F. Supp. 2d 988, 1007 (S.D. Tex. 2011)).  "Because recovery for wrongful foreclosure is premised upon loss of possession, a person who never loses possession of the property cannot recover on a theory of wrongful foreclosure." *Id.* (citing *Motten* and other authorities); *see also, e.g.*, *Anderson v. Baxter, Schwartz & Shapiro LLP*, 2012 WL 50622, at *3 (Tex. App.— Houston [14th Dist.] Jan. 10, 2021, no pet.) ("As Anderson acknowledges, no foreclosure sale has occurred in this case. Thus, Anderson cannot recover on his claim for wrongful foreclosure as a matter of law ....").

Adegbenro has neither alleged nor presented any evidence that a foreclosure sale of the Property occurred.  *See, e.g.*, Dkt. 16 ¶ 174 (unsubstantiated allegation that Bank of America "initiated a wrongful foreclosure against Plaintiffs [sic]"); Dkt. 40 at 37 (asserting without proof that Bank of America "initiated a wrongful foreclosure against Plaintiffs [sic]" that "resulted in a judgment on the premise that [Bank of America] would not take the Plaintiff's home"; further speculating about potential damages "[i]f" Bank of America "has sold the property to a third-party bona fide purchaser for value").  The notice of foreclosure he submitted was issued by Countrywide—

not Bank of America—in 2011.  Dkt. 22 at 166.  But Countrywide ultimately transferred its interest in the Property to Bank of America.  *See* Dkt. 22 at 167 (Aug. 18, 2011 assignment of the deed of trust).  And the foreclosure sale obviously never happened; Countrywide transferred its interest in the Property to Bank of America, Dkt. 22 at 167 (Aug. 18, 2011 assignment of the deed of trust), and Adegbenro subsequently entered into a Modification Agreement with Bank of America in 2013, Dkt. 1-2 at 39-44.  Without a foreclosure sale—much less any proof that such a sale resulted in an inadequate price—the wrongful foreclosure claim fails as a matter of law.

## F.    DTPA

Regarding the DTPA claim, Bank of America argues that Adegbenro is not a "consumer" entitled to assert this claim.  Dkt. 34 at 11-12.  This contention is correct.

Only a "consumer" can assert a DTPA claim.  *See Doe v. Boys Clubs of Greater Dallas*, 907 S.W.2d 472, 478 (Tex. 1995) (listing this as one of several elements under Tex. Bus. & Com. Code § 17.50(a)(1)).  To qualify as a consumer, "a person must have sought or acquired goods or services by purchase or lease" and "the goods and services purchased or leased must form the basis of the complaint." *Cameron v. Terrell & Garrett Inc.*, 618 S.W.2d 535,

539 (Tex. 1981); *see also* Tex. Bus. & Com. Code Ann. § 17.45(4) (definition of "consumer").

Apart from his improper new contentions (including that the Modification Agreement was discriminatory or forged, *see supra* Parts I.B.2 & 3 (excluding unpleaded allegations and inadmissible evidence), Adegbenro's DTPA claim has several components: (1) allegations that Bank of America committed deceptive or unfair practices when inducing the Modification Agreement, such as failing to disclose its inclusion of a variable interest rate, Dkt. 1-2 ¶ 13; *id.* ¶ 159 (incorporating earlier paragraphs); (2) unsubstantiated allegations that Bank of America "claim[ed] to have a public auction where none transpired," Dkt. 36 at 37-38; and (3) allegations that Bank of America improperly charged certain fees during its servicing of the loan, Dkt. 1-2 ¶ 8.

The first category, which concerns the execution of the Modification Agreement in 2013, does not involve the procurement of a good or service. To the contrary, Adegbenro purchased the house years earlier, in 2006. Dkt. 22 at 65-67 (August 31, 2006 general warranty deed). The Modification Agreement therefore "is akin to refinancing in that it [was] not sought for the acquisition of a good or service, but rather to finance an existing loan on previously acquired property." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 725 (5th Cir. 2013) (affirming dismissal of DPTA claim where "the

alleged loan modification was not a part of the financing scheme to acquire a house" but was "sought after the purchase of the house was complete").

Adegbenro's other theories concern Bank of America's alleged conduct, like charging of fees, after the Modification Agreement was executed.  This subsequent conduct while servicing the loan "is not a good or service under the DTPA."  *Malek v. Green Tree Servicing, LLC*, 2015 WL 12570836, at *2 (S.D. Tex. May 19, 2015) (granting summary judgment on DTPA claim, for this reason).  Based on Adegbenro's lack of "consumer" status, Bank of America is entitled to summary judgment on the DTPA claim.

### G.    Negligence

Bank of America next challenges Adegbenro's negligence claim, arguing that it owed him no duty of care and that the economic loss rule bars recovery. Dkt. 24 at 12-14.  The law supports Bank of America's contentions.

The economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991)).  "In operation, the  rule  restricts  contracting  parties  to  contractual  remedies  for  those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *Id.*

37

at 12-13 (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)); *see also Mass v. Wells Fargo Bank, N.A.*, 2022 WL 61161, at *5 (S.D. Tex. Jan. 6, 2022) (citing *Colbert v. Wells Fargo Bank, N.A.*, 850 F. App'x 870, 876 (5th Cir. 2021)).  That is precisely the case here.

Adegbenro's negligence theory primarily asserts that Bank of America breached its duty by "adding fees, costs and charges which were not owed, and overcharging for fees which were owed ...."  Dkt. 1-2 at 26.  As discussed *infra*, Part II.H, whether certain fees were properly charged depends on the terms of Modification Agreement.   Indeed, the exact same allegation underlies Adegbenro's claim for breach of contract.  *See* Dkt. 1-2 at 26-27.

Adegbenro's further allegation that Bank of America "falsely claim[ed] to hold a public auction during a pandemic" but did not hold the auction is conclusory and unsubstantiated.  *See* Dkt. 1-2 at 27; Dkt. 16 ¶¶ 203, 208.  As already noted, *see supra* Part II.E, the record contains no evidence that Bank of America initiated foreclosure proceedings under the Modification Agreement, much less that any foreclosure sale was scheduled.  Regardless, Adegbenro's own allegations confirm that his complaints about improper charges or handling of (an unsubstantiated) auction are governed by his agreements with Bank of America.  *See, e.g.*, *Mass*, 2022 WL 61161, at *5 (rejecting tort claims where "the only possible source of such a duty would be

Plaintiff's contract with Defendant—and thus the economic loss rule precludes recovery"). And given the lack of a special relationship between Adegbenro and Bank of America, *see supra* Part II.D, there is no basis to find any duty of care apart from the contract that could support a negligence claim. *See, e.g., id.* Bank of America is entitled to summary judgment on this claim.

## H.    Breach of contract

Bank of America contends that Adegbenro's breach of contract claim fails both for lack of evidence that it breached any contractual provision, and that Adegbenro performed his own contractual obligations. Dkt. 34 at 6-7. "Under Texas law, the elements of a breach of contract claim are '(1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Spot Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003) (internal quotation marks omitted).

As pleaded, Adegbenro's breach of contract claim raises several theories: (1) that Bank of America committed a material breach by "stealing the property by false claims that the property was sold at public auction," or otherwise mishandled the foreclosure process, Dkt. 1-2 ¶¶ 70, 72, 75, 81-84; (2) that Bank of America failed "to credit payment from all sources received for the satisfaction of the subject mortgage," *id.* ¶ 72; (3) that Bank of America

misused 'the securitization process and servicers" in an unspecified way "to fabricate" unspecified documents, thereby committing "a felony," *id.* ¶ 79; and (4) that Bank of America imposed improper charges, *id.* ¶ 76.[11]  The first three theories—regarding foreclosure, satisfaction of the mortgage, and misuse of the "securitization process and servicers"—are wholly unsubstantiated.  There is no evidence that Bank of America has foreclosed on the Property.  *See supra* Part II.E (wrongful foreclosure claim).  Nor is there any evidence that the mortgage balance was satisfied or otherwise paid by another source.  There likewise is no evidence that Bank of America improperly used the "securitization process" or loan servicing by fabricating any documents.  Summary judgment on these theories is therefore appropriate.

Adegbenro's remaining theory asserts that Bank of America (and its predecessor, Countrywide) improperly charged inspection fees.  While not addressing this contention specifically, Bank of America invokes the general principle that a plaintiff must show he performed his contractual obligations to sue for breach.  Dkt. 34 at 7-8 (citing *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016); *Walker v. Willow Bend Mortg. Co.*, 2019 WL

---

[11] The Court rejects Adegbenro's attempts to raise new theories for the first time when responding to the motion for summary judgment.  *See supra* Parts I.B.2 & 3; *see also, e.g.*, Dkt. 36 at 35-37 (alleging that he did not sign the documents and that Bank of America discriminated against him).

159638, at *6 (N.D. Tex. Apr. 11, 2019)).  But the Fifth Circuit has recognized an exception to this rule, where the obligation that a lender allegedly breached only arises when the borrower defaulted on payments.  *See Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244-45 (5th Cir. 2018).  In that instance, the borrower's default cannot prohibit his suit for the lender's breach of the contractual obligation; otherwise, the obligation would "have no meaning."  *Id.* (addressing lender's breach of obligation to provide notice of default).  The same reasoning applies to the inspection fees, which Bank of America was authorized to charge only "in connection with Borrower's default ...."  Dkt. 1-2 at 80 ¶ 14.  To give that obligation meaning, Adegbenro's failure to satisfy his payment obligations does not preclude recovery for improper inspection fees.

Moreover, Adegbenro has presented evidence supporting this theory. The deed of trust authorizes the loan servicer to make "reasonable ... inspections of" the Property and to charge the borrower for those inspections. Dkt. 1-2 at 78, 80.  But the frequency of those inspections—conducted monthly during certain periods—calls into question whether the inspections were "reasonable."  *See* Dkt. 2 at 155-58 (listing over thirty $15 charges from 2009 to 2013, accounting for offsets).   Courts have found similarly frequent inspections to be unreasonable.  *See, e.g.*, *In re Stewart*, 391 B.R. 327, 344-45 (Bankr. E.D. La. 2008) (Wells Fargo's imposition of fees for 44 inspections over

period of 79 months was unreasonable), *aff'd*, 2009 WL 2448054 (E.D. La. Aug. 8, 2009), *vacated in part on other grounds, appeal dism'd in part*, 647 F.3d 553 (5th Cir. 2011).  And according to Adegbenro's Declaration, Bank of America refused to respond to his requests for information (and requests for discovery) about how and why these inspection fees were charged.  Dkt. 16 ¶¶ 27-39, 140, 145; *see supra* Part I.C (addressing Adegbenro's request to compel this discovery).  The record thus raises genuine issues of fact regarding the reasonableness of the inspection fees.

As a result, while nearly all of Adegbenro's breach of contract theories are unsubstantiated, Bank of America has not negated the existence of a fact issue on the theory that it charged unreasonable inspection fees.  This theory, but not others, should survive summary judgment.

## I.      Requests for declaratory and injunctive relief

Bank of America's challenge to Adegbenro's requests for declaratory and injunctive relief hinge entirely on the assumption that none of his other claims can survive.  *See* Dkt. 34 at 14-16.  This is not the case.

Requests for declaratory judgment and injunctive relief are derivative, such that they depend on the existence of some other cause of action.  *See, e.g.*, *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 630 (S.D. Tex. 2011).  But as concluded *supra*, Parts II.A & H, there are fact issues on one of Adegbenro's

breach of contract theories, and Bank of America never moved for summary judgment on his TILA and RESPA claims.  Bank of America therefore has not negated the existence of a "genuine controversy" between the parties that could potentially support declaratory or injunctive relief.  *See, e.g.*, *Dutch Bro LLC v. DutchPro B.V.*, 2017 WL 7052291, at *3 (W.D. Tex. Oct. 31, 2017) (denying summary judgment on declaratory judgment claims where other claims were still outstanding), *report and recommendation adopted*, 2017 WL 7053925 (W.D. Tex. Nov. 30, 2017).  Bank of America has articulated no other reason why this relief is potentially unavailable.  Its request for summary judgment on the requests for declaratory and injunctive relief should be denied.

## Orders and Recommendations

For the foregoing reasons, it is **ORDERED** as follows:

- that Defendant Bank of America's Rule 12(c) motion for judgment on the pleadings (Dkt. 15) is **CONVERTED** into a motion for summary judgment and resolved in conjunction with its explicit motion for summary judgment (Dkt. 34);

- that Bank of America's motion to strike (Dkt. 19) Plaintiff Adesunmbo Adegbenro's responses, which are filed as Dkt. 16 and 17, is **DENIED**;

- that Adegbenro's motion for leave to file those responses (Dkt. 27) is **GRANTED**;

- that Bank of America's motion to strike (Dkt. 26) Adegbenro's Declaration, contained in Dkt. 16, be **GRANTED IN PART** and **DENIED IN PART**;

43

- that Adegbenro's request to compel discovery (contained in Dkt. 16 and 17) be **DENIED IN PART** and scheduled in part for further conference, which will be set by separate order;

- that Bank of America's motion to strike (Dkt. 42) Adegbenro's further motion to compel discovery, filed as Dkt. 39, be **GRANTED;** and

- that Adegbenro's request for a continuance of ruling on Bank of America's motion for summary judgment (contained in Dkts. 16 and 17) be **DENIED** partly as moot and partly as unwarranted.

It is further **RECOMMENDED** as follows:

- that Bank of America's motion to strike (Dkt. 37) Adegbenro's cross-motion for summary judgment, filed as Dkt. 36, be **GRANTED**;

- that Bank of America's motion to strike (Dkt. 42) Adegbenro's additional cross-motion for summary judgment, filed as Dkt. 40, be **GRANTED**; and

- that Bank of America's motion for summary judgment (Dkt. 34) and the Rule 12(c) motion that has been converted into a motion for summary judgment (Dkt. 15) be **GRANTED IN PART** with respect to Adegbenro's claims for quiet title (Claim 2), conspiracy to defraud (Claim 4), breach of the implied or express covenants of good faith and fair dealing (Claim 5), wrongful foreclosure (Claim 7), under the Texas Deceptive Trade Practices Act (Claim 8), negligence (Claim 9), and most of his breach-of-contract theories (Claim 3), and **DENIED IN PART** with respect to (a) the breach-of-contract theory that Bank of America improperly charged inspection fees (Claim 3); (b) the TILA and RESPA claims (Dkt. 1-2 ¶¶ 7-14 & n.1, 27, 43); and (c) the requests for declaratory and injunctive relief (Claims 1 and 10).

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude**

appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on June 12, 2023, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge